# BERNARDS TOWNSHIP *v.* STEBBINS, Executor.

# SAME *v.* MORRISON and another.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEW JERSEY.

Argued November 7th, 8th, 1883.—Decided November 26th, 1883.

*Equity—Jurisdiction—Municipal Bonds—Municipal Corporations—Parties—Statutes.*

If commissioners, authorized by statute to subscribe in the corporate name of a town for stock in a railroad company, and, upon obtaining the consent of a certain majority of taxpayers, to issue bonds of the town under the hands and seals of the commissioners, and to sell the bonds and invest the proceeds of the sale in stock of the railroad company, which shall be held by the town with all the rights of other stockholders, issue, without obtaining the requisite consent of taxpayers, to the railroad company, in exchange for stock, such bonds signed by the commissioners, but on which the seals are omitted by oversight and mistake; and the town sets up the want of seals in defence of an action at law afterwards brought against it by one who has purchased such bonds for value, in good faith, and without observing the omission, to recover interest on the bonds; a court of equity, at his suit, will decree that the bonds be held. as valid as if actually sealed before being issued, and will restrain the setting up of the want of seals in the action at law.

A bill in equity in the Circuit Court of the United States against a town in one State by a citizen of another, for relief against the accidental omission of seals from bonds of the defendant, payable to bearer, and held by the plaintiff, some of which are owned by him, and others of which are owned in different amounts, part by citizens of the State in which the town is, and part by citizens of other States, and have been transferred to him by the real owners for the mere purpose of being sued, should be dismissed, under the act of March 3d, 1875, c. 137, § 5, so far as regards all bonds held by citizens of the same State as the defendant, and bonds held by a citizen of another State to a less amount than $500.

The facts are fully stated in the opinion of the court.

*Mr. Alvah A. Clark* and *Mr. Thos. N. McCarter* for appellants Stebbins and Morrison and another.

*Mr. H. C. Pitney* for Stebbins, appellee.

*Mr. Courtlandt Parker* for appellees Morrison and another.

Mr. Justice Gray delivered the opinion of the court.

These are appeals by a township in New Jersey from decrees of the Circuit Court of the United States for the District of New Jersey, upon bills in equity by the appellees for relief against the accidental omission of seals on its bonds. The facts, appearing by the record, are as follows:

By the general laws of New Jersey, the inhabitants of each township in the State are a body politic and corporate, by the name of "The Inhabitants of the township of —— in the county of ——." Rev. Stat. of N. J. of 1877, 1191.

On the 9th of April, 1868, the legislature of New Jersey passed a statute entitled "An Act to authorize certain towns in the counties of Somerset, Morris, Essex and Union to issue bonds and take stock in the Passaic Valley & Peapack Railroad Company," the first section of which directed the circuit court of either of those counties, on the application of twelve or more freeholders and residents of any township therein, situated along the route of the railroad, to appoint three " commissioners for such township to carry into effect the purposes and provisions of this act." The next two sections are as follows:

"Sec. 2. It shall be lawful for said commissioners to borrow, on the faith and credit of their respective townships, such sum of money, not exceeding ten per centum of the valuation of the real estate and landed property of such township, to be ascertained by the assessment rolls thereof respectively for the year eighteen hundred and sixty-seven, for a term not exceeding twenty-five years, at a rate of interest not exceeding seven per centum per annum, payable semi-annually, and to execute bonds therefor, under their hands and seals respectively ; the bonds so to be executed may be in such sums, and payable at such times and places, as the said commissioners and their successors may deem expedient; but no such debt shall be contracted or bonds issued by said commissioners of or for either of said townships, until the written consent shall have been obtained of the majority of the taxpayers of such township, or their legal representatives, appearing upon the last assessment roll, as shall represent a majority of the landed property of such township (including lands owned by non-residents) appearing upon the last assessment roll of such

township; such consent shall state the amount of money authorized to be raised in such township, and that the same is to be invested in the stock of the said railroad company, and the signatures shall be proved by one or more of the commissioners; the fact that the persons signing such consent are a majority of the taxpayers of such township, and represent a majority of the real property of such township, shall be proved by the affidavit of the assessor of such township, indorsed upon or annexed to such written consent, and the assessor of such township is hereby required to perform such service; such consent and affidavit shall be filed in the office of the clerk of the county in which such township is situated, and a certified copy thereof in the town clerk's office of such township, and the same or a certified copy thereof shall be evidence of the facts therein contained, and received as evidence in any court in this State, and before any judge or justice thereof.

"SEC. 3. The said commissioners authorized by this act may, in their discretion, dispose of such bonds, or any part thereof, to such persons or corporations and upon such terms as they shall deem most advantageous for their said township, but not for less than par ; and the money that shall be raised by any loan or sale of bonds shall be invested in the stock of said railroad company for the purpose of building the aforesaid railroad, and said money shall be applied and used in the construction of said railroad, its buildings, equipment and necessary appurtenances, and for no other purpose ; the commissioners respectively, in the corporate name of each of their said townships, shall subscribe for and purchase stock in said railroad company, to the amount they may have severally borrowed as aforesaid ; and by virtue of such subscription or purchase of stock, upon receiving certificates for the amount of said stock so subscribed for or purchased by them, the said townships shall acquire all the rights and privileges respectively of other stockholders of said company, and it shall be lawful for the commissioners provided for in this act, or either of them, with the consent of the others, or a majority of the said commissioners, to participate in and to act in all the regular and legally authorized meetings of the stockholders, and either of them may act as director of said company if he shall be duly elected as such."

By § 4, the commissioners were directed to report annually

to the township committee the amount required for the next year to pay the interest or principal of the bonds, and to apply in payment thereof the dividends on the stock subscribed or purchased for the township; and any deficiency was to be assessed and levied upon the landed property of the township, like other taxes. By § 5, the railroad company might agree with the commissioners, "in behalf of their respective townships," to pay the interest accruing "on the bonds issued by such townships," for three years, or until the railroad should be completed and earning sufficient to pay dividends equal to the interest. By § 6, the commissioners might, after acquiring stock, exchange it for bonds issued, and cancel the bonds so received; or they might, with such consent as mentioned in § 2, sell the stock for cash at public sale, and apply the proceeds to the purchase or redemption of the bonds. And by § 7, at the end of twenty-five years, the sum due for principal and interest on the bonds, as reported by the commissioners, was to be assessed and levied on the landed property.

By § 9, the commissioners were required, before entering upon the discharge of their duties, to give a bond to the township, with sureties approved by the township committee or by the judge of the county court. By § 11, their pay and disbursements were to be "audited and paid by the township committee, the same as other township expenses." By § 12, the commissioners in each township were "to constitute a board to act for their said townships respectively." And by § 14, all bonds issued were required to be registered in the office of the county clerk, and the words "registered in the county clerk's office" to be printed or written across the face of each bond, attested by the signature of the county clerk, "and no bond shall be valid unless so registered."

Commissioners for the Township of Bernards in the county of Somerset were appointed, and gave bond to the township, according to §§ 1, 9. On the 17th of December, 1868, they filed in the county clerk's office the written consent of a number of taxpayers, not being a majority of all the taxpayers in the township, but being a majority in number and value of the owners of real estate therein; with an affidavit of one of the

commissioners to the signatures; and an affidavit of the assessor that the signers were a majority of the taxpayers of the township and represented a majority of the real property of the township, and also that they were a majority of the taxpayers of the township appearing upon its assessment roll for 1867, or their legal representatives, and represented a majority of the landed property of the township appearing upon that assessment roll.

In the same month of December, 1868, the commissioners subscribed in behalf of the township for stock in the railroad company, of the value of $127,000, which did not exceed ten per cent. of the assessed valuation of the landed property of the township in 1867; and caused bonds of the township to an equal amount to be printed in the form hereinafter set forth; and made an arrangement with the railroad company to exchange the bonds of the township for stock in the company, and to deliver the bonds to the company in instalments, as calls for payments on subscriptions were made, and as the work on the railroad progressed. The railroad was afterwards built and put in operation through the town; and the commissioners issued to the railroad company, in exchange for stock, instruments to the amount aforesaid, in the form of bonds, of the denominations of $1,000, $500 and $100 respectively, signed by the commissioners, but not sealed, with interest coupons annexed. The form of the bonds and the coupons was as follows:

"No.          UNITED STATES OF AMERICA.          $500.

"TOWNSHIP OF BERNARDS, SOMERSET COUNTY, STATE OF NEW JERSEY.

"The Inhabitants of the Township of Bernards in the County of Somerset acknowledge themselves to owe to bearer five hundred dollars, which sum they promise to pay the holder hereof, at the American Exchange National Bank in the City of New York, twenty-three years after the date hereof, and interest thereon at the rate of seven per cent. per annum, payable semi-annually, on the first days of July and January in each year, until

the said principal sum shall be paid, on the presentation of the annexed interest coupons at the said bank.

"This bond is one of a series of like tenor, amounting in the whole to the sum of one hundred and twenty-seven thousand dollars, issued on the faith and credit of said township in pursuance of an act entitled 'An Act to authorize certain towns in the counties of Somerset, Morris, Essex, and Union to issue bonds and take stock in the Passaic Valley and Peapack Railroad Company,' approved April 9th, 1868.

"In testimony whereof the undersigned commissioners of the said Township of Bernards in the County of Somerset to carry into effect the purposes and provisions of the said act, duly appointed, commissioned, and sworn, have hereunto set our hands and seals the first day of January in the year of our Lord one thousand eight hundred and sixty-nine:

"JOHN H. ANDERSON,
"JOHN GUERIN,
"OLIVER R. STEELE,
" *Commissioners.*"

"Registered in the county clerk's office.
"WILLIAM ROSS, JR.,
" *County Clerk.*"

"$17.50. The Inhabitants of the Township of Bernards in the County of Somerset will pay the bearer, at the American Exchange National Bank in the City of New York, seventeen $\frac{50}{100}$ dollars, on the first day of January, 1869, for six months interest on bond No.

"JOHN H. ANDERSON,
"JOHN GUERIN,
"OLIVER R. STEELE,
" *Commissioners.*"

One-fifth of the whole amount of bonds was signed by the commissioners and delivered to the railroad company on the 16th of January, 1869, was registered on the 18th of the same month, and was afterwards put in circulation by the company. Upon a bill filed by certain taxpayers of an adjoining township in the spring of 1869, the Court of Chancery of New Jersey restrained the issue of like bonds, for want of the consent of a

majority of all the taxpayers of the township. *Lane* v. *Schomp*, 5 C. E. Green, 82. The commissioners thereupon obtained, and filed in the county clerk's office on the 1st of September, 1869, the written consent of other taxpayers, which, with those whose consent had been previously filed, constituted a majority of all the taxpayers in the township, with similar affidavits of commissioner and assessor; and the remaining four-fifths of the bonds were afterwards issued and registered, and put in circulation. Of the bonds in controversy, some were issued before, and some after, the 1st of September, 1869.

The commissioners intended to issue, and supposed that they had issued, perfect bonds, and their failure to affix their seals to the bonds was by oversight and mistake. The bonds were purchased by the present owners in good faith, in open market, for the then market price of from eighty-five to a hundred cents on the dollar, and without observing that they had no seals.

Cyrus Curtiss, a citizen of New York (of whom the appellee in the first case is the executor), held and owned such bonds to the amount of $2,000; and held like bonds to the amount of $3,000, owned by other citizens of New York, in amounts varying from $1,300 to $500 each, except that one owned only $200, and delivered by them to him solely for the purpose of bringing suit on the coupons; and also held coupons past due and unpaid upon like bonds to the amount of $18,600, owned by citizens of New Jersey, who had assigned those coupons to him for the sole pupose of collecting the amount thereof.

Thomas H. Morrison and Gardner S. Hutchinson, citizens of New York (the appellees in the second case), held and owned such bonds to the amount of $10,000; and also held like bonds to the amount of $12,000, owned by other persons, citizens of New York or Pennsylvania, in amounts varying from $6,000 to $500 each, as well as bonds to the amount of $5,100 owned by citizens of New Jersey, all which bonds had been transferred to them by the owners for the mere purpose of collecting the unpaid coupons thereon.

In April, 1874, actions of debt were brought by Curtiss, and by Morrison and Hutchinson, against the township, in the Cir-

cuit Court·of the United States for the District of New Jersey, to recover the amount of unpaid coupons for three years' interest·on all the bonds so held ·by the plaintiffs; to which the township pleaded that the bonds were ·not sealed by the commissioners.

The plaintiffs. in each of those actions· thereupon, in the spring of 1876, after requesting the two surviving commissioners (the third having died meanwhile) to affix their seals to the bonds, which they declined to do unless by order of some court of competent jurisdiction, filed a bill in equity in the same court, praying for a reformation of the . bonds; for an order ·that the. surviving commissioners affix seals opposite the signatures; for a decree. that the bonds should be deemed and taken to be as valid and effectual in law as if they had been in fact sealed by the commissioners before being issued; for a perpetual injunction against the setting up of the want of seals as a defence in the action already brought, or in any future action by the plaintiffs to recover principal or interest, due or to grow due, on the bonds; and for further relief. . Demurrers to the bills were interposed and overruled; answers and replications were filed, and a hearing was had upon pleadings and proofs.

At the hearing, it was objected, in behalf of the township, that the plaintiffs, if entitled to any relief, could maintain their bills so far only as concerned the bonds that were both owned and held by them, and not as regarded the bonds owned by other persons. The court overruled the objection, and entered a final decree upon each bill that the bonds, or writings in the nature of bonds, therein described, be held and deemed to be as valid and effectual in law as if they had been in·fact sealed by the commissioners before being issued; and that the township ·be perpetually enjoined from setting up the· want of seals in the action at law already brought, or in any action to be thereafter brought, upon any of these bonds or coupons. From those decrees the township has appealed to this court.

It was contended in behalf of the township that the bonds were void: First. Because they were not under the seals of the commissioners, as required· by ·the· statute. Second. Because the statute did not authorize the issue of bonds with annexed

and detachable coupons not under seal.   Third.  Because the consent of the taxpayers to the borrowing of money and issue of the bonds was obtained by fraud.   Fourth.  Because the consent of a majority of all the taxpayers, as well as of those who represented a majority of the landed property of the township, was not obtained before the subscription for stock and the issue of the bonds.   Fifth.  Because the bonds were issued by the commissioners directly to the railroad corporation in exchange for stock, instead of being sold, or disposed of by the commissioners and the money thus obtained applied to the purchase of stock, as required by the statute.

In dealing with these objections, it must be borne in mind that the cases before us are not actions at law upon the bonds or coupons, but bills in equity to restrain the township from setting up the want of seals in the actions at law heretofore brought by those plaintiffs against the township to recover the amount of the coupons; and the objections above recited are to be considered so far only as they affect the question whether the bills can be maintained.

It has been settled, upon fundamental principles of equity jurisprudence, by many precedents of high authority, that when the seal of a party, required to make an instrument valid and effectual at law, has been omitted by accident or mistake, a court of chancery, in order to carry out his intention, will, at the suit of those who are justly and equitably entitled to the benefit of the instrument, adjudge it to be as valid as if it had been sealed, and will grant relief accordingly, either by compelling the seal to be affixed, or by restraining the setting up of the want of it to defeat a recovery at law.  *Smith* v. *Aston,* Freem. Ch. 308; *S. C.* Cas. temp. Finch, 273; *Cockerell* v. *Cholmeley,* 1 Russ. & Myl. 418, 424; *Wadsworth* v. *Wendell,* 5 Johns. Ch. 224; *Montville* v. *Haughton,* 7 Conn. 543; *Rutland* v. *Paige,* 24 Vt. 181.   See also *Wiser* v. *Blachly,* 1 Johns. Ch. 607; *Green* v. *Morris & Essex Railroad Co.,* 1 Beasley, 165, and 2 McCarter, 469; *Druiff* v. *Parker,* L. R. 5 Eq. 131.

By the necessary effect and the very terms of the statute of New Jersey of 1868, the money is borrowed on the credit of the township, the stock obtained by the disposal of the bonds

belongs to the township, the bonds are issued on behalf of the township, and are the bonds of the township; and the commissioners, though not elected by the township, but otherwise appointed as provided by the statute, act in issuing the bonds, and in doing everything else that they are required by the statute to do, as the agents of the township. This view has been affirmed by the judgment of the Supreme Court of New Jersey, construing this very statute, in *Morrison* v. *Bernards*, 7 Vroom, 219, and by the judgment of this court upon the effect of a similar statute of New York, in *Draper* v. *Springport*, 104 U. S. 501.

In *Draper* v. *Springport* it was held that the mere fact that the commissioners had only signed, without sealing, the bonds, did not exempt the town from liability to a purchaser thereof in good faith and for valuable consideration. And Mr. Justice Bradley, in delivering judgment, said:

"It is apparent from the law that the substantial thing authorized to be done on behalf of the town was to pledge the credit of the town in aid of the railroad company in the construction of its road, by subscribing to its capital stock, and issuing the obligations of the town in payment thereof. The technical form of the obligations was a matter of form rather than of substance. The issue of bonds under seal, as contradistinguished from bonds or obligations without a seal, was merely a directory requirement. The town, indeed, had no seal; and the individual seals of the commissioners would have had no legal efficacy; for the bonds were not their obligations, but the obligations of the town; and their seals could have added nothing to the solemnity of the instruments." "We cannot agree with the courts of the State that the form of a seal was an essential part of the transaction."

It was argued that the power conferred upon the commissioners to issue bonds was a statutory power, defects in the execution of which could not be supplied or relieved against in equity. There is much learning on this subject in the books. But Mr. Chance, upon a full review of the older cases, has clearly demonstrated that the true ground upon which equity grants relief is "the same as that on which it relieves against

the want of livery, the want of enrolment, or any other cere-
mony required, either at common law or by statute, but con-
sidered as not meant to be positively essential. The main
point to be ascertained, at least with reference to forms pre-
scribed by act of Parliament, is whether the legislature has
attached a decisive weight to the observance of the forms."
Chance on Powers, § 2989. See also 2 Sugden on Powers (7th
ed.) 125–129.

In *Darlington* v. *Pulteney*, Cowp. 260, 267, Lord Mansfield
said that the reason why equity could not relieve from defects
in the execution of statutory powers to make leases was, "that
there is nothing to affect the conscience of the remainderman."
And in *De Riemer* v. *Cantillon*, 4 Johns. Ch. 85, where a
sheriff's deed of land sold by him on execution omitted, by
mistake in the description, an important part of the estate ad-
vertised and intended to be sold and purchased, and the pur-
chaser, with the consent of the judgment debtors, took posses-
sion of and improved the whole, and afterwards, at their
request, sold it, and conveyed by a like description, all parties
understanding and believing that the whole was included in
both deeds, and the price paid by the second purchaser being
estimated on this basis, Chancellor Kent, upon a bill in equity
filed by the last purchaser against the debtors, restrained them
from prosecuting suits brought against him for the recovery of
the land not included in the description, and decreed that they
should release it to him.

In the present case, the commissioners, in issuing the bonds,
acted rather in the capacity of agents of the township than as
donees of a statutory power in the ordinary sense; and the
direction of the statute that the bonds should be under the
seals, as well as the hands, of the commissioners, was declared
by this court in *Draper* v. *Springport*, above cited, to be " a
matter of form rather than of substance," " merely a directory
requirement," and not " an essential part of the transaction."
The bonds are in other respects in the form prescribed by the
statute. The commissioners intended to issue them in behalf
of the town, pursuant to the statute, and stated on the face of
the bonds that they had done so, and that they had thereto set

their hands and seals. The town received full consideration for the bonds, and the purchaser bought them in open market, in good faith and for value, and in ignorance of the want of seals. These facts present a strong case for the interposition of a court of equity, having jurisdiction of the cause and of the parties, to prevent the formal defect of the want of the seals of the commissioners from being set up to defeat an action at law upon the bonds or coupons. The mere fact that the purchasers, at the time of their purchase, did not observe the omission of seals upon securities having in all other respects the appearance of municipal bonds, is not such negligence as should prevent them from applying to a court of equity to correct a mistake of this character. See *Wadsworth* v. *Wendell* and *Montville* v. *Haughton*, above cited; *Harris* v. *Pepperell*, L. R. 5 Eq. 1; *Elliott* v. *Sackett*, 108 U. S.

The objection that the statute did not authorize the bonds to be issued with coupons, if it is of any validity (which we do not intimate), will be fully open to the defendant in the actions at law upon the coupons.

The suggestion that the consent of the taxpayers to the issue of the bonds was obtained by fraud is not supported by the evidence.

The consent of a majority of all the taxpayers of the township has been held necessary by the court of chancery and by the Supreme Court of New Jersey. The chancellor, in granting an injunction against the issue of bonds without such consent, expressed the opinion that the want of such consent would afford no defence at law after the bonds had been once issued, and had come into the hands of innocent holders for value. The supreme court decided otherwise. *Lane* v. *Schomp*, 5 C. E. Green, 82; *Morrison* v. *Bernards*, 7 Vroom, 219. The question has not, so far as we are informed, been passed upon by the court of errors.

The exchange of the bonds directly for railroad stock would seem, in the absence of any decision in the courts of the State upon the point, to be a substantial compliance with the statute, or, at the most, a matter which would not defeat the rights of a *bona fide* purchaser. See *Scipio* v. *Wright*, 101 U. S. 665; *Montclair* v. *Ramsdell*, 107 U. S. 147, 160.

But if either the want of a written consent of a majority of all the taxpayers, or the fact that the bonds were issued directly in exchange for stock, is a fatal objection as against a purchaser for value and in good faith, it may be availed of by the township in the actions at law on the coupons. If these objections are not of that character, they do not impair the equity of the purchasers to relief against the accidental omission of the seals of the commissioners. The validity of both these objections, therefore, may be more appropriately determined in the actions at law.

The remaining question argued at the bar is how far the citizenship of the real parties in interest, and the amount of the claim of each, should affect the exercise of jurisdiction and the extent of the decree.

The position of the plaintiffs is, that the bonds and coupons being payable to bearer, they are entitled to sue, at law or in equity, on all the coupons held by them; that the combination of the holders of several claims of moderate amount against the same defendant, for the purpose of diminishing and sharing the expense of litigation, was entirely proper, and should be encouraged by the court; that the bonds and coupons owned as well as held by the plaintiffs, and by others not citizens of New Jersey, clearly brought the case within the jurisdiction of the court; and that to deny to citizens of New Jersey the right to transfer their claims to the plaintiffs for the purpose of collection in the same suit would be to discriminate unjustly between the citizens of New Jersey and the citizens of other States.

But, in the matter of the jurisdiction of the federal courts, the discrimination between suits between citizens of the same State and suits between citizens of different States is established by the Constitution and laws of the United States. And it has been the constant effort of Congress and of this court to prevent this discrimination from being evaded by bringing into the federal courts controversies between citizens of the same State.

In the Judiciary Act of 1789, the only express provision to this end was that the circuit court should not " have cognizance

of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange." Stat. September 24th, 1789, c. 20, § 11; 1 Stat. 78; Rev. Stat. § 629, cl. 1. That provision has been held not to be restricted to actions at law, but to include bills in equity to foreclose mortgages, or to compel the specific performance or enforce the stipulations of contracts. *Sheldon* v. *Sill*, 8 How. 441; *Corbin* v. *Black Hawk County*, 105 U. S. 659.

In *Barney* v. *Baltimore*, 6 Wall. 280, a bill in equity for the partition of real estate and for an account of rents and profits, in the Circuit Court of the United States for the District of Maryland, by a citizen of Delaware, owning a share in the estate, against citizens of Maryland, owning other shares therein, and to whom the owners of the remaining shares, being citizens of the District of Columbia, and not of any State, and therefore not authorized to sue in the Circuit Court of the United States, had conveyed their shares without consideration, under an agreement to reconvey upon request, and for the sole purpose of giving jurisdiction to the federal courts, was dismissed, because the grantors were necessary parties to the suit, and because their conveyance, not transferring their real interests to the other parties, was a fraud upon the court.

The act of March 3d, 1875, c. 137, § 5, directs that if "in any suit commenced in a circuit court," it shall appear to the satisfaction of the court, "at any time after such suit has been brought," "that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable" by the circuit court, that court "shall proceed no further therein, but shall dismiss the suit," and shall make such order as to costs as shall be just; and its order of dismissal shall be reviewable in this court on writ of error or appeal. 18 Stat. pt. 3, 470.

In *Williams* v. *Nottawa*, 104 U. S. 209, decided by this court since the hearing of these cases in the circuit court, an action was brought by Williams, a citizen of Indiana, in the Circuit Court of the United States for the Western District of Michigan, against a township in that State and district, upon its bonds payable to bearer. The action, as the record on file shows, was brought in September, 1874 about six months before the passage of the act of 1875. It appeared that Williams personally owned only three of the bonds, of $100 each, and that the other bonds in suit had been transferred to him solely for the purpose of collection with his own, by the owners thereof, all of whom were citizens of Michigan, except one Tobey, whose bonds amounted to $300 only, and whose citizenship was not disclosed by the record. The circuit court gave judgment for the plaintiff for the amount of the bonds belonging to Williams and to Tobey, and in favor of the township for the remainder. Upon a writ of error sued out by Williams to reverse the judgment in favor of the township, this court held that, in obedience to the act of 1875, the action should be wholly dismissed; because, so far as concerned the bonds owned by citizens of Michigan, who could not sue a Michigan township in the courts of the United States, it could not be doubted that the transfer to the plaintiff, being colorable only, and never intended to change the ownership, was made for the purpose of "creating a cause cognizable in the courts of the United States;" and, as to the bonds owned by Williams and by Tobey, there was a collusive joinder, because, when the suit was begun, the amount due to each was less than $500, and therefore insufficient to maintain a suit in the federal courts.

The decision in *Williams* v. *Nottawa* establishes that the Circuit Court of the United States cannot, since the act of 1875, entertain a suit upon municipal bonds payable to bearer, the real owners of which have transferred them to the plaintiffs of record for the sole purpose of suing thereon in the courts of the United States for the benefit of such owners, who could not have sued there in their own names, either by reason of their being citizens of the same State as the defendant, or by reason of the insufficient value of their claims. The principle of that

decision is equally applicable to suits in equity to assert equitable rights under such bonds.

It was argued that these bills in equity were only auxiliary to the actions at law, which were brought before the passage of the act of 1875, and therefore that act had no application. The answer to this is twofold. First. The bills in equity, filed since the passage of the act, are independent suits, of broader aim than the actions at law. The actions at law are to recover the amount of coupons only; the bills in equity seek, not merely an injunction against setting up the defence of want of seals in the pending actions on the coupons, but also a decree declaring that the bonds shall be deemed valid. Second. Even the actions at law, brought before the passage of the act of 1875, are subject, under the adjudication in *Williams* v. *Nottawa*, to be dismissed, in whole or in part, as the facts may require, in the court in which they are pending.

It follows, that these bills should have been dismissed, so far as regarded the bond for $200, owned by a citizen of New York in the first case, and also as to all the bonds owned by citizens of New Jersey in either case. But no valid objection has been shown to the maintenance of these bills, so far as regards those bonds of which the plaintiffs are the bearers, and which are actually owned, either by themselves, or by other citizens of New York or Pennsylvania, to a sufficient amount by each owner to sustain the jurisdiction of the circuit court. *Thompson* v. *Perrine*, 106 U. S. 589; *Chickaming* v. *Carpenter*, 106 U. S. 663; *Douglas' Commissioners* v. *Bolles*, 94 U. S. 104, 109; *Cromwell* v. *Sac County*, 94 U. S. 351, 360. The decrees of the circuit court must be modified accordingly.

The decrees in favor of the appellees being reversed as to a large part of their claims, they should pay costs in this court; but as they still maintain their bills as to the rest of their claims, they should recover costs in the court below.

The decrees of the circuit court are reversed, and the cases remanded with directions to enter

*Decrees in conformity with this opinion.*

MR. JUSTICE FIELD took no part in this decision.