**CITY OF MUSKOGEE v. KLOTZ et al.**

No. 18985. Opinion Filed Jan. 7. 1930.

Rehearing Denied April 29, 1930.

C. A. Ambrister and Bower Broaddus, for plaintiff in error.

Neff & Neff, for defendant in error, Lyman E. Klotz.

G. A. Paul, Stone, Moon & Stewart, and Harry C. Barker, for other defendants in error.

LESTER, V. C. J. Lyman E. Klotz brought suit in the district court of Muskogee county, Okla., to compel through a writ of mandamus the payment by the city of Muskogee and its officers a one-third of a certain judgment that plaintiff had previously obtained against the city of Muskogee in the United States Court for the Eastern District of Oklahoma.

The judgment that was obtained in the federal court against the city was on the alleged grounds that the city, by its tortious action, had invalidated certain street improvement bonds alleged to have been owned and in possession of the plaintiff, Klotz. In the action brought by Klotz in the district court of Muskogee county certain parties intervened and claimed that they were the

owners in fact of the judgment obtained by Klotz by reason of their ownership of the street improvement bonds, and therefore were entitled to payment on the federal judgment.

The city of Muskogee filed its answer, in which it charged that the judgment was obtained in the federal court by fraud upon the jurisdiction of said court; that the plaintiff, Klotz, was never the owner of said improvement bonds nor in possession of the same; and that the plaintiff, by reason of fraudulent representation set forth in his petition in the federal court, caused the federal court to assume jurisdiction of the action.

After trial was had in the district court of Muskogee county, the court rendered its judgment decreeing that Klotz had no interest in the federal judgment; and that the interveners were the owners of the federal judgment. To this finding of the district court of Muskogee county, the plaintiff, Klotz, and the city of Muskogee appeal.

From a review of the record, briefs, and the assignments of error we find that there are three major propositions to be reviewed on appeal: (1) Did the plaintiff Klotz, in his petition in the federal court falsely and fraudulently make a misstatement of facts such as to cause the federal court to take jurisdiction of the action? (2) Did the interveners by their conduct become a party to the fraud practiced on the federal court? (3) If they did will they be permitted to ask a court of equity to transfer the ownership of the federal judgment from Klotz to the interveners?

It appears that one Walter E. Orthwein, acting for and on behalf of the owners of certain street improvement bonds, procured Lyman E. Klotz to bring suit in the federal court to recover judgment; that G. A. Paul was employed as an attorney to file the suit in the federal court; that said G. A. Paul, for and on behalf of said Lyman E. Klotz, did thereafter file in the federal court of the Eastern district of Oklahoma the petition of Lyman E. Klotz; that said petition stated and alleged in part:

"That said bonds were duly entered upon the bond register in the office of the city auditor, and the record of payment of a part of said bonds and the interest payments is attached hereto, made a part hereof and marked Exhibit 'A': and that each of said bonds being bonds Nos. 5 to 110, inclusive, are now owned by and in the possession of the said plaintiff herein; that there is due at this time upon said bonds, after the payment of all sums applied upon the payment of said bonds, the principal sum of forty-three thousand five hundred one dollars and seventy-two cents ($43,501.72), together with interest on said sum from the 15th day of November, 1914, at the rate of six (6%) per cent. per annum, less the payment of the several items of interest as shown by Exhibit 'A' attached hereto; that there is now due to the said plaintiff, by reason of the execution of said bonds, the said sum of forty-three thousand five hundred one dollars and seventy-two cents, together with interest at the rate of six (6%) per cent. per annum from the 15th day of November, 1914, less partial payment of interest as aforesaid."

Nowhere does it appear from the petition of Lyman E. Klotz filed in the federal court that said Klotz was acting other than as the sole owner of and in possession of said street improvement bonds. Nowhere does it appear that he was acting as trustee or as agent for another.

G. A. Paul, who claims that he has at all times represented the interveners, affirmatively and specifically alleged in the petition of Klotz filed in the federal court "that said Klotz was the owner of and in possession of said street improvement bonds." The record clearly shows that Klotz was never the owner of, nor that he ever had the said bonds in his possession.

G. A. Paul, as attorney for interveners, filed in the district court of Muskogee county a plea of intervention, and in the 10th paragraph thereof stated and alleged:

"That the said plaintiff (Klotz) is neither authorized nor empowered by either of these answering defendants to present said bonds for payment, nor to collect any sum whatsoever from city of Muskogee arising from the rendition of said judgment in the United States District Court and growing out of the beneficial interests that each of these answering defendants has therein."

It is not claimed by the interveners that the federal judgment was assigned to them by Klotz. The record shows that G. A. Paul made a visit to Klotz in the state of California for the purpose of procuring an assignment from him of said judgment; and that Klotz refused to assign the same.

The record shows that Klotz was never the owner of or had said bonds in his possession. The record also clearly shows that the whole program of action between Klotz and the owners and holders of the said bonds was one of deceit and fraud, in order to procure the federal court to assume jurisdiction.

The plaintiff, Klotz, testified on cross-examination by G. A. Paul, (C.-M. 253):

"Q. The fact of the matter is you don't know who the bondholders are?

"A. Some of them, the Heman Construction Company owned a large block of bonds, and on account of them doing the work and for fear the city would bring up the question of them not complying with their contract they didn't want to bring suit individually and would rather sacrifice the bonds rather than have them declared void on account of not complying with their contract with the city."

The district court of Muskogee county found in part (C.-M. 69):

"The court further finds and holds as a fact that at the time of the bringing of said cause No. 3762 in the District Court of the United States for the Eastern District of Oklahoma, the following of the interveners herein held bonds in amounts less than a par, or face value, of three thousand dollars each and in actual and exact amounts as follows, to wit:

| | |
|---|---|
| The Cobb State Bank | $2,000.00 |
| S. M. Burgess | 2,000.00 |
| May White Peters | 1,000.00 |
| H. Frank Paddock | 1,000.00 |
| Leon S. Mygatt | 1,000.00 |
| L. V. Fauver | 1,000.00 |
| Henry J. Oekle | 300.00 |
| J. H. Cordes | 213.25 |
| A. P. Robinson | 500.00 |
| W. S. Beyer | 200.00 |
| Conn Grable | 26.50" |

Lyman E. Klotz in his brief, at page 19, states:

"It was contended in the trial court that the federal court judgment was only partially illegal for the reason some of the assignors each owned more than $3,000 in bonds. The following cases quoted in the opinion of the Supreme Court of Washington in State v. DeMattos, 152 Pac. 721, at 724, suffices to answer the contention:

" 'A judgment cannot be void in part and good in part; it must be either valid or void in whole; and where fraud attaches to a part only of a judgment, the whole is a nullity. Hutchins v. Lockett, 39 Tex. 166, 170; Richards v. Finney & Walter, 12 Johns (N. Y.) 434; Williams v. Delaware & Hudson Co., 156 App. Div. 695, 141 N. Y. Supp. 606; Meyer v. Kuhn, 65 Fed. 705, 13 C. C. A. 298.' "

Klotz does not seriously insist that the federal court had jurisdiction over the subject-matter or that he had any interest in the subject-matter of the said suit. In fact, we think Klotz concedes the federal court was without jurisdiction to enter judgment, for again in his brief, at page 13, he states:

"The United States Supreme Court has several times held that mere colorable transfers, for the purpose of conferring apparent jurisdiction upon federal courts, are frauds upon the court, if the pretended assignors remained the real owners of the things pretended to be transferred."

"And in said brief he calls attention to the following authorities:

" 'In stating the object and scope of that act this court in Williams v. Nottawa, 104 U. S. 209, 211, 26 L. Ed. 719, 720, referred to the Act of 1875 and said: "In extending a long way the jurisdiction of the courts of the United States, Congress was especially careful to guard against the consequences of collusive transfers to make parties, and imposed the duty on the court, on its own motion, without waiting for the parties, to stop all further proceedings and dismiss the suit the moment anything of the kind appeared. This was for the protection of the court as well as parties against frauds upon its jurisdiction; for, as was very properly said by Mr. Justice Miller, speaking for the court in Barney v. Baltimore, 6 Wall. 280, 288, 18 L. Ed. 825, 827, such transfers for such purposes are frauds upon the court, and nothing more." ' Miller v. East Side, etc., Canal Co., 211 U. S. 293 at 297, 53 L. Ed. 189 at 191.

" 'Upon a writ of error sued out by Williams to reverse the judgment in favor of the township, this court held that, in obedience to the Act of 1875, the action should be wholly dismissed; because, so far as concerned the bonds owned by citizens of Michigan, who could not sue a Michigan township in the courts of the United States, it could not be doubted that the transfer to the plaintiff, being colorable and never intended to change the ownership, was made for the purpose of "creating a cause cognizable in the courts of the United States"; and, as to the bonds owned by Williams and by Tobery, there was a collusive joinder, because, when the suit was begun, the amount due to each was less than $500, and therefore insufficient to maintain a suit in the federal courts.

" 'The decision in Williams v. Nottawa established that the Circuit Court of the United States cannot, since the Act of 1875, entertain a suit upon municipal bonds payable to bearer, the real owners of which have transferred them to the plaintiffs of record for the sole purpose of suing thereon in the courts of the United States for the benefit of such owners, who could not have sued in their own names, either by reason of being citizens of the same state as the defendant, or by reason of the insufficient value of their claims. The principle of that decision is equally applicable to suits in equity to assert equitable rights under such bonds.' Inhabitants v. Stebbins, 109 U. S. 341 at 355, 27 L. Ed. 956 at 961."

The next proposition concerns the equitable rights of the bondholders.

The record clearly discloses that the bondholders, acting together with Klotz, agreed that Klotz should falsely represent to the federal court that he was the owner of and

in possession of the bonds in order that he might obtain certain colorable rights by procuring a federal judgment in his favor. After this judgment was procured by and through collusion of the bondholders with Klotz, the bondholders then sought the aid or a court of equity and asked that they be decreed the equitable owners of said judgment and collect thereon. G. A. Paul, who procured the federal judgment for Klotz, appeared for the interveners in the state court when Klotz sought to collect the federal judgment by suit in the state court. Said G. A. Paul admits that at the time he filed the Klotz petition in the federal court he was then representing the bondholders and not Klotz, and that the bondholders remained the equitable owners at all times, although Klotz stated in his petition filed in the federal court that he, Klotz, was the owner and in possession of the said bonds.

In the case of Farmington Village v. Pillsbury, 114 U. S. 138, 29 L. Ed. 114, it is held:

"The holders of interest coupons on municipal bonds transferred them, to the amount of $7.922, to the defendant in error, the consideration being a note for $500 and an agreement to pay over the balance of fifty per cent. of the net amount when collected. Held, that a suit on said coupons brought in the Circuit Court of the United States should be dismissed for want of jurisdiction, the case being within the Act of 1875."

See, also, Township of Bernards v. Stebbins, 109 U. S. 341, 27 L. Ed. 956.

The conduct of the bondholders places them in the position where they are not entitled to the equitable aid of the state court in transferring the rights under a judgment that they caused to be entered by reason of their fraud and collusion with Klotz and where they were a party to the fraudulent misrepresentation of the facts in order to have the federal court assume colorable jurisdiction and render a judgment in the name of another for colorable advantages.

In the case of Flesner v. Cooper, 62 Okla. 263, 162 Pac. 1112, this court said:

"It seems but elementary to say that the law, in the exercise of its creative power, will not use the faulty material of fraudulent intent, or create a contractual structure which shelters its own masked enemy, fraud. Where the law does not attack, it will not consort with fraud, but will leave it alone. * * * The law will not enforce the fraudulent or unlawful intention by creating a resulting trust, and consequently will not disturb the legal title."

The third paragraph of the syllabus in the case of Rust v. Gillespie, 90 Okla. 59, 216 Pac. 480, states:

"Under the maxim, 'he who comes into equity must come with clean hands,' a court of equity will not lend its aid in any manner to one who has been guilty of unlawful or unequitable conduct in a transaction from which he seeks relief, nor to one who has been a participant in a transaction the purpose of which was to defraud a third person, to defraud creditors, or to defraud the government, nor to a party to a transaction whose purpose is violative of public policy."

The city of Muskogee contends that it is entitled to a judgment against the interveners for a previous payment made by the city to them under a misapprehension of facts. Under the pleadings and record here submitted, such contention is not tenable.

It is contended by the plaintiff, Klotz, that it was error for the district court of Muskogee county to admit the evidence of G. A. Paul, he having been the attorney of record for Klotz in the federal court. We think that the evidence of Paul was inadmissible; however, the evidence of Klotz is sufficient to show that he was neither the owner of nor was he in possession of the bonds at the time he caused the federal court to take jurisdiction thereof. In brief, the record herein shows that Klotz, acting with the bondholders, collusively and wrongfully caused the federal court to take jurisdiction of the action and render judgment thereon; second, that the bondholders, having participated in the fraud, were not entitled to equitable relief and have themselves declared the owners of said judgment.

The judgment of the district court is reversed, with directions to dismiss the petition of the plaintiff, Lyman E. Klotz, and also the plea of intervention and answer filed by Heman Construction Company et al.; interveners.

MASON, C. J., and HUNT, CLARK, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. RILEY, J., absent.

Note.—See "Judgments," 34 C. J. §1645, p. 1162, n. 73.