## BULLARD et al. v. CITY OF CISCO, TEX.
### No. 6511.

Circuit Court of Appeals, Fifth Circuit.

Dec. 21, 1932.

See, also, 48 F.(2d) 212.

Dexter Hamilton, of Dallas, Tex., and Daniel V. Raymond, of New York City, for appellants.

J. J. Butts and F. D. Wright, both of Cisco, Tex., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the appellants, four individuals, three of whom are citizens of New York, and one a citizen of Ohio, against the appellee, a Texas municipal corporation, to recover the amounts of past-due bonds made by appellee, and of past-due interest coupons from such bonds, both the bonds and the coupons being payable to bearer, with interest on amounts of such bonds and coupons. Appellants' petition alleged that they held title to bonds of the appellee of described issues in an amount aggregating $2,115,000, of which $14,000 is past due, and title to past-due interest coupons on said bonds in an amount aggregating $335,787.50. Appellee's answer to the petition contained allegations to the following effect:

The appellants are not the owners of the bonds or coupons sued upon, or any of them. They paid no valuable consideration therefor, but such bonds and coupons were delivered to, and are held by, appellants merely and solely for the purpose of collection, under the terms of a written agreement providing for a bondholders' committee, a copy of which agreement was made an exhibit to the answer. Numerous beneficial owners of bonds and coupons sued on do not own a sufficient amount thereof to give the court jurisdiction of their claims. By written stipulation of the parties, a jury was waived. Evidence taken in the trial showed the following: The appellants constituted the bondholders' committee provided for by the written agreement above referred to. All the bonds and coupons sued on and introduced in evidence were delivered to appellants by the respective holders thereof, and were held by the appellants under the terms of the above-mentioned agreement. That agreement provided for holders of such bonds and coupons becoming parties to such agreement by depositing bonds and coupons with a designated depositary; for

every depositor by his deposit selling, assigning, transferring, and delivering to the committee all his right, title, interest, property, and claim, at law or in equity, by virtue of such bonds and coupons, to the end that the committee be vested with full legal title to all bonds and coupons deposited; for the committee having the power as owner and holder of deposited bonds and coupons to collect and receive all moneys due and payable thereunder; to settle, compromise, or discontinue any action or proceeding for the collection of any of the bonds or coupons; to purchase, acquire, contract in regard to, deal in, or sell or dispose of any property real or personal, which may be or become affected by liens, foreclosures, or taxes; to pledge all or any part of such bonds as collateral security for the payment of such moneys borrowed by the committee as it shall deem necessary or desirable; to charge the bonds and coupons for the compensation and expenses of the committee, its agents and depositaries; for any member of the committee becoming pecuniarily interested in any property or matters which are, or may become, subject to the agreement, or in any plan or agreement of refinancing or readjustment which the committee may approve; and for the committee having at any time the right to terminate the agreement.

That agreement also provided for each depositor of bonds and/or coupons receiving a certificate of deposit signed by the depositary or agency receiving the same in such form as may be provided by the committee, and transferable only upon the books of the depositary issuing such certificate; that "the registered holder for the time being of any certificate shall be deemed for all purposes to be the absolute owner thereof and the bonds and/or coupons therein referred to"; that, after a plan adopted by the committee for refinancing, readjusting, liquidation, or settlement of all or any part of the bonds shall have become operative, the committee shall return to each holder of a certificate of deposit dissenting from the plan the bonds and coupons represented by his certificate of deposit upon the surrender of the certificate and payment by him of an amount to be fixed by the committee; for such depositor, in the event of a termination of the agreement, being entitled to the delivery of bonds and coupons to the amount represented by the certificate of deposit upon surrendering the certificate properly indorsed to the depositary and paying the depositor's share of the indebtedness, obligations, liabilities, and expenses of the committee; and that the agreement shall not remain in force beyond the period of five years unless extended by the committee with the consent of the holders of certificates of deposit representing a majority in amount of the deposited bonds and coupons.

An affidavit of one of the appellants, which was received in evidence, contained statements to the effect that appellants hold no bonds transferred by a citizen of Texas, and that two individuals, one a citizen of Maine, the other a citizen of Massachusetts, and an Ohio corporation, each transferred and delivered to the appellants bonds upon which were past-due coupons exceeding in amount $3,000. A deposition of the same appellant, which was introduced in evidence by appellee, showed that, in answer to an interrogatory calling for the names of the several persons, firms, and corporations from whom appellants acquired bonds, and the amounts of bonds so acquired, stated: "I have no knowledge of these facts." The court rendered judgment dismissing the suit for lack of jurisdiction, but without prejudice.

A statute provides that "if in any suit commenced in a district court * * * it shall appear to the satisfaction of the said district court, at any time after such suit has been brought, * * * that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable" by the district court, that court "shall proceed no further therein, but shall dismiss the suit, * * * and shall make such order as to costs as shall be just." 28 USCA § 80. It appears from the terms of the agreement under which the appellants acquired and held the bonds and coupons sued on that appellants were not the beneficial owners of those bonds and coupons, but held them for collection only. While language contained in the instrument evidencing that agreement, when considered alone, and without regard to other provisions contained therein, indicates that appellants acquired the legal and equitable title to the transferred bonds and coupons, other provisions of the instrument show that the appellants held the transferred bonds and coupons for the purpose of enforcing claims based thereon, or of compromising, adjusting, or settling such claims, and that the transferors of such bonds and coupons remained the beneficial owners of whatever might be realized from such

claims, less the part thereof used in paying the compensation of appellants and the amounts of the proper expenses of the appellants, their agents and depositaries. The fact that that instrument contains sundry provision for the appellants having powers which, without such provisions, would have been possessed by absolute beneficial owners of such bonds and coupons is indicative of the absence of an intention to give to the transfer of bonds and coupons to the appellants the effect of terminating the transferors' beneficial ownership of or interest therein. The correctness of a conclusion that a deposit of bonds or coupons under the agreement had the effect of putting an end to the depositor's beneficial ownership thereof is distinctly negatived by the provision that "the registered holder for the time being of any certificate shall be deemed for all purposes to be the absolute owner thereof and the bonds and/or coupons therein referred to."

The evidence showed that all the bonds and coupons were acquired by the appellants from the owners thereof under the above-mentioned agreement. There was no evidence as to the amount of bonds or coupons owned by any of the depositors except that to the effect that each of three named depositors transferred and delivered to the appellants bonds upon which were past-due coupons exceeding in amount $3,000. No evidence showed that any other depositor owned past-due bonds or coupons exceeding in amount $3,000. The answer of the appellee having raised an issue as to any of the beneficial owners of bonds and coupons sued on owning or holding an amount thereof sufficient to give the court jurisdiction, and there being no evidence tending to prove that any of such owners, except the three above referred to, owned past-due bonds or coupons sufficient in amount to give the court jurisdiction of a suit thereon, the record fails to show that the past-due bonds or coupons owned by any transferor, except the three above mentioned, were sufficient in amount to enable the real owner to sue thereon. In so far as the suit was for the enforcement of claims upon which the real owners could not have sued because of the insufficiency of the amount of their claim or claims, it did not really and substantially involve a dispute or controversy properly within the court's jurisdiction, and, so far as regards those claims, the inclusion of which in the suit evidences a purpose to get the court to take cognizance of a dispute or controversy not properly within its jurisdiction, the suit should have been dismissed. Bernards Township v. Stebbins, 109 U. S. 341, 3 S. Ct. 252, 27 L. Ed. 956; Lake County v. Dudley, 173 U. S. 243, 19 S. Ct. 398, 43 L. Ed. 684; Waite v. Santa Cruz, 184 U. S. 302, 22 S. Ct. 327, 46 L. Ed. 552; Woodside v. Beckham, 216 U. S. 117, 30 S. Ct. 367, 54 L. Ed. 408; Hartford Fire Ins. Co. v. Erie R. Co. (C. C.) 172 F. 899. The decision in the case of Bernards Township v. Stebbins, supra, supports the conclusion that where, as in the instant case, the record shows that some of the sued on bonds or coupons payable to bearer could have been sued on by the real owners, but does not show that other such bonds or coupons sued on could have been sued on by their real owners, the above-cited statute does not prevent the maintenance of the suit in so far as it is for the enforcement of claims suits on which by the real owners would have been within the court's jurisdiction. As to the last-mentioned claims, based on instruments made by a corporation and payable to bearer, the suit was not kept from being one within the court's jurisdiction by the fact that appellants were vested with the legal title to those instruments simply for the purpose of collection. 28 USCA § 41 (1); Waite v. Santa Cruz, supra, page 325 of 184 U. S., 22 S. Ct. 327; The decision in the case of Lake County v. Dudley, supra, is not opposed to the conclusion that, as to the last-mentioned claims, the instant suit was within the court's jurisdiction, and should not have been dismissed for lack of jurisdiction. Language used in the opinion in the cited case is to be read in the light of the facts that it was a suit on a Colorado corporation's interest coupons transferred or assigned to the plaintiff, and that it does not appear from the report of the case that the plaintiff therein procured from any one assignor who was a citizen of a state other than Colorado coupons in the amount required to give the court jurisdiction.

In the argument in behalf of the appellee, it was suggested that the dismissal of the suit is sustainable by reason of the absence of evidence identifying and segregating from the approximately $350,000 bonds and coupons sued on the past-due coupons owned by the three transferors above mentioned. The judgment shows that the cause was "dismissed for lack of jurisdiction, and without prejudice." In the opinion rendered by the court, reference was made to the evidence showing that each of several transferors owned bonds

upon which were past-due coupons exceeding in amount $3,000. In that connection the following was stated in the opinion: "Now it appears that these transferors, because of residence, could have maintained the suit. Even if the Court should hold that under this kind of an arrangement the persons named in the affidavit could maintain the suit, it is evident that all the balance of these claims must be dismissed. Under the state of the record, if they are to be dismissed all must be dismissed because the claims of these parties are not separated, not segregated in the evidence in any way; they cannot be identified. In view of the whole situation, it is my conclusion that this case in its entirety should be dismissed." We do not think that the statement that the claims referred to cannot be identified is warranted by the record. The agreement in pursuance of which the bondholders' committee was formed provided for each depositor of bonds and/or coupons receiving a certificate of deposit signed by the depositary or agency receiving the same, provisions on the subject indicating that such certificates, and registry records or book entries in reference thereto, contained descriptions of the bonds deposited. In the absence of evidence to the contrary, it seems reasonable to infer or suppose that the certificates issued upon the deposit of the bonds owned by the three mentioned depositors, as well as records or book entries in regard thereto, indicated the bonds deposited, that a production of those certificates or records or book entries in regard thereto could have been procured, and that, by means thereof, the past-due coupons owned by those depositors could have been identified. It seems that, before dismissing the suit in so far as it asserted claims based on those coupons, the court's discretion would have been properly exercised by affording a further opportunity to make clear proof of claims asserted by the suit and already shown to be within the court's jurisdiction. The court's failure in the circumstances disclosed to afford such further opportunity reasonably may be attributed to the mistaken conclusion that it would be futile to do so. The record showing that claims sued on were within the court's jurisdiction, and, not showing that the identity of those claims could not be proved, we conclude that the court erred in dismissing the suit for lack of jurisdiction. Because of that error, the judgment is reversed, and the cause is remanded, with direction that a new trial be granted.

Reversed.