TORBETT ENTREKIN v. SUSAN CHAMBERS, *et al.*

1. MISNOMER; JUDGMENT; *Names of Parties; Idem Sonans.* A judgment against Robert *Brimford*, quieting title to a certain piece of land, rendered upon a default, and upon service by publication only, is not valid or binding as against the owner of the land whose name is Robert *Binford*.

2. TAX-SALES—*Must be Held at Time designated by Statute.* A sale of land in Miami county, for the taxes of 1858, at a tax-sale *"begun and held on the* 23d *day of September*, 1859," is not valid or binding as against the owner of the land.

### Error from Miami District Court.

THE action below was commenced by John A. Chambers, to quiet his title to 160 acres of land in Miami county. Chambers claimed to be the owner in fee of said lands, and in the exclusive possession thereof; and on the trial, to establish his title, he gave in evidence a patent for said land from the government to Robert Binford, dated October 1st, 1858; a deed from Binford to H. S. Campbell; a deed from Campbell and wife to Wm. G. Krutz, for an undivided-half interest in the land, and a deed from Campbell and wife, and Krutz, to himself, for said land. The deed to Chambers was dated June 17th, 1869. Said conveyances were duly executed, and duly recorded. The defendant *Entrekin* claimed to own and hold said land in fee, and on the trial he offered in evidence records and conveyances showing the following facts: Said land was assessed in 1858; "at a tax-sale, begun and held on the 23d day of September 1859," said land was sold by the treasurer of Miami (then Lykens) county, for the unpaid taxes levied on said assessment of 1858, and bid in by said treasurer for the county: the county clerk of said county, on the 27th of January 1864, executed a "deed of release" of "all his interest as county clerk" in said lands to "the county of Miami:" on the 1st of January 1866, the board of commissioners of Miami county, quitclaimed to one Joel Abbott "the interest of said county" in said lands, for $115.44: on the 4th of December 1868, the county clerk of said county, in consideration of $115.94, issued a tax-deed to said Abbott for said lands on said tax-sale of September 23d, 1859: on the 29th of July 1868, said Joel Abbott commenced an action in the district court of Miami county against Robert *Brimford*, to quiet his title to said lands; in his petition he alleges that he (Abbott) "has the legal title, and is in the peaceable possession" of the lands, and that

defendant (Brimford) "sets up and claims an estate in said premises adverse to the estate and interest of plaintiff," etc., (but the petition does not show or state in what way or manner Abbott acquired the title which he claims;) the only service made or attempted in said action was constructive, by publication, on the ground that said "Brimford" was a non-resident, etc.; and in said action a decree was entered, December 9th 1868, quieting Abbott's title, said decree reading, "And now comes the said Joel Abbott, by W. R. W., his attorney, and the said Robert *Brimford* still failing to appear, answer, or demur," etc.    On the 14th of April 1869, said Joel Abbott conveyed said land by deed to *Torbett Entrekin*.    The action was tried at the December Term 1870, of the district court. Said court held that the deed of release from the county clerk to the county, and the quitclaim-deed and tax-deed to Abbott, were all void, and refused to admit them in evidence.    The court also held that Abbott acquired no right or title to the lands in controversy by reason of the record and decree in the case of "Abbott v. *Brimford*," and that the grantees of *Binford* were not bound by, nor estopped by, such record and decree, and refused to admit the same as evidence.    The court held that *Entrekin* had no title or interest in or to said lands; that his claim was void; that *Chambers* was the legal and equitable owner of the land, and judgment was given quieting *Chambers'* title.    Subsequently to this decree said John A. Chambers died, and the action was revived against his widow and children, as his heirs.    *Entrekin* brings the case here by petition in error for review.

*W. R. Wagstaff*, for plaintiff in error:

The court erred in refusing to receive in evidence the deed from the county clerk to Miami county.    The land in the petition described was subject to taxation for the year 1858, and was sold to Miami county under the law then in force, for the delinquent taxes.    The law in force at the time of the sale authorized the county treasurer to bid off delinquent lands for the county when they could not be sold for the

amount of taxes, interest and charges assessed thereon; (Laws of 1858, page 369, § 90.) The land thus bid off for the county remains liable to be taxed the same as the property of individuals, and the taxes, interest and charges thereon is a *lien* on the lands, but the lands so bid in for the county shall not be offered for sale for any taxes thereafter assessed, until it shall have been redeemed, or shall be sold by the county, or the tax certificate to the county shall have been assigned. (Laws of 1858, page 369, § 91.) When the treasurer bid off this land for the county, under the law, an equitable lien attached for the amount of taxes due, with costs and interest and the subsequent taxes accruing, with increased interest and costs. This is so by express statutory enactment. It is so at law, in the absence of special legislation. These equitable rights attach when the bid is accepted, and the purchase-money paid, and the statute then in force constitutes the law of the contract. (Blackwell, page 299.) The record shows that on the 27th of January 1864, when the county clerk conveyed to the county said land, the taxes and charges amounted to $46.53. The board of county commissioners, on the 1st of January 1866, quitclaimed the interest of said county in said lands to Joel Abbott, for $115.44. On the 4th of December, 1868, the county clerk, in consideration of the sum of $115.94, conveyed to Abbott said lands. Had no deed been executed on the 4th of December 1868, and no evidence of redemption, conveyance or assignment, there would remain a lien upon said land of $115.94, and the subsequent taxes accruing with interest and costs would be a lien and incumbrance upon said land. The lien remains until redeemed or cancelled. The county board by quitclaim transfers this lien to Joel Abbott, and the county clerk also makes a transfer of this lien. If there was no law in force authorizing the making of a deed for lands sold for delinquent taxes, with power to levy and assess, this lien would attach and be transferred to Abbott, and would remain a cloud and incumbrance upon the same. The plaintiff in his petition alleges that the tax incumbrances mentioned are clouds upon

his title, and without even any offer to refund or do equity, asks that this lien be removed, and the court orders it done accordingly. (Blackwell, 372, § 10.)

2. The plaintiff in error in addition to an existing equitable lien, holds by virtue of said tax-deeds a legal title to said lands. In the absence of special statutory enactments, the law in force at the time of a transaction governs as to the rights and powers of all the parties in interest. (Blackwell, 298, 373, 475; 17 Wis., 562.) At the time of this sale, the county was entitled to receive a conveyance from the county clerk for land sold for taxes, the same as an individual, with like legal guarantees and equities as given to an individual purchaser. (Laws of 1858, page 369, § 92.) "All real and personal estate heretofore or which may be hereafter conveyed to any county shall be deemed the property of such county." Laws of 1858, page 195, § 2. "All suits, rights, actions, contracts, judgments and claims, both as respects individuals and bodies corporate, accruing under the territorial government, shall continue under the state government as if no change had taken place." (Const., § 1 of Schedule; Laws 1866, page 291, § 113.) The county having purchased at the tax-sale, has a vested right to a deed when the time of redemption expires; and the legislature, by repeal of the tax law, does not nor cannot repeal the authority of the officer to execute the deed. 4 Gilman, 274, 278; 1 Gilman, 26; Blackwell, 372. The authority of Abbott to convey his interest to Torbett Entrekin is not controverted. The effect of the tax-deed, as a matter of evidence, is determined by the law in force at the time of the sale: Blackwell, 298, 300; Story on the Const., §§ 1385, 1378; 12 Wend., 491; 21 Wis., 354; 7 Curtis, 139.

The defendant claims the deed is void on its face. If the deeds are all void, the defendant must show them to be void. The deeds recite the sale made September 23, 1859, and the defendant says that was not, under the law, a day on which a tax-sale could be made, and for that reason it was no sale. The statutes in force authorizing and regulating the sale,

when it occurred, may be examined as lights to direct the line of argument. The 83d section of, the act of 1858, page 367, fixes the second Tuesday of April, and the next succeeding days, for the sale of lands for delinquent taxes. The 118th section of the same law provides that should the county treasurer in any year unavoidably omit or fail to sell the lands returned for delinquent taxes on the second Tuesday of April, that the sale shall be held on the second Tuesday of September next ensuing, which sale shall in every respect be valid and binding. Section 90 makes it the duty of the county treasurer, in conducting the sale of land for delinquent taxes, when no one bids for the land when offered, *to pass that particular piece of land by,* for the time being, but before the close of the sale to re-offer, and then if no one purchases, it becomes his duty to bid the same in for the county, for the amount of taxes. It does appear, by a fair interpretation of the language of these sections of the law, that the legislature did not intend to limit the power of sale to a particular day. There can be found nowhere, negative words restraining the treasurer from making the sale *after* the day named; the naming of the time, therefore, must, in this case, be considered as directory, and not as a limitation of authority. Blackwell, 156; 3 Mass., 230; 6 Wend., 486; 10 Mo., 117.

3. The court erred in refusing to admit in evidence the quitclaim deed of date January 1st, 1866, from the county commissioners to Abbott. The commissioners are a corporate body, made so by law, and are authorized to act for and in behalf of the county. It is the commissioners that have control of the county property, real and personal. Whatever interest the county had in the land in controversy, was under the control of the commissioners, and whatever interest the county had in said land was transferred by this quitclaim deed. As against Abbott and those claiming under him the county by reason of this quitclaim deed would be estopped from setting up any claim to any interest the county had previously acquired in said land, on account of this tax-sale. But if there is a mistake in regard to the power of the com-

missioners, the defect is cured by the subsequent conveyance of county clerk to Abbott. These conveyances have the legal effect of transferring to Abbott the interest of the county in the tax-certificate of sale, as well as the title vested by deeds.

4. The record of the proceedings and decree in the case of Joel Abbott v̇. Robert Brimford ought to have been received by the court in evidence. The defendant in error derived his title from Robert Binford since the date of the proceedings and decree offered. The plaintiff in error derived his title from Joel Abbott. The name of the patentee of the land in question is *Robert Binford.* The name of the defendant in the record and decree, offered in evidence, is Robert Brimford. We maintain that Robert Binford, and Robert Brimford, when uttered and pronounced by the organs of speech, give forth the same sound; or, to be more classical, we call it *idem sonans.* For legal examples of sounds, or rather in regard to the legal discrimination of sounds, the attention of the court is called to the cases in 9 Ohio, 120; 20 Ind., 444; 7 Blackf., 326; 4 Blackf., 171; 8 Ind., 19; 10 Ala., 370. If Binford and Brimford is *idem sonans,* it follows the decree against Brimford, offered in evidence by the defendant below, is conclusive between Joel Abbott and Robert Binford, and the grantees of both are bound by the decree.·

The judgment and proceedings offered in evidence, is the judgment of a court of general jurisdiction. Such a judgment cannot be impeached collaterally for want of jurisdiction over the parties: 18 Pick., 393; 2 Am. Leading Cases, 812; 5 Cranch, 173; 2 Wall., 341; 1 Conn., 467; 30 Conn., 190. The attempt in this case is to impeach collaterally the judgment and proceedings. The record and proceedings offered in evidence in this case was a proceeding to quiet title, and in the nature of a proceeding *in rem.* The land was correctly described; the record in the case recites the service of notice, and a finding that the defendant, Robert Brimford, had·notice of the pendency and prayer of the petition by six weeks publication, etc., which said finding of the court is conclusive. 2 Ohio St., 286.

*B. F. Simpson*, for defendants in error:

1. The decree in the case of Joel Abbott v. Robert Brimford is not evidence against, and is not binding on Robert Binford, or his grantees. Brimford and Binford are not *"idem sonans, et idem significans."* 20 Pick., 436; 5 U. S. Dig., 429, §§ 11–16; 9 id., 342, § 2; 21 id., 380; 40 Penn. St., 453; 13 Johns., 77; 15 Johns., 226; 4 Cowen, 158; 3 Abbot Dig., 279, §§ 2, 3; 2 Curtis, 84.

2. It should appear affirmatively from the record of the case of Abbott v. Brimford, in order to estop Brimford or his grantees, that the identical question raised in the case now at bar, was directly in issue and passed upon in that case; that there were in the pleadings in that case of Abbott v. Brimford matters of fact alleged, which raised this *precise issue;* that every fact necessary and essential to Abbott's title, and to his right to maintain the action to quiet title, and to obtain relief, must have been stated in his petition positively, as *facts*, not as inferences, or as legal conclusions. A party can never divest another of title without alleging sufficient facts against him. It is not the *recovery* or *decree* alone, that concludes a party, but it is the *matters alleged* upon which the recovery is based; and the same rule applies with equal force to privies. In his petition to quiet title, Abbott does not set up the muniments of title. He contents himself with the general conclusion, that he is "the legal owner" of the land. He does not state what claim, right, title or interest the defendant "Brimford" has in the land, but simply states that he claims an interest adverse to him, and that he has none. All these are mere conclusions. A party must show by the allegation of facts, that he is entitled to the relieving hand of the court, before the court can legally act and adjudicate upon the rights of parties: Story's Eq. Pl., § 257; 1 Greenl. Ev., §§ 528, 530; 5 Gilman, 499; 32 Ill., 23; 1 Metc., (Mass.,) 288; 18 Wend., 116; 12 Conn., 372; 17 Pick., 4; 10 Ohio St., 45; 15 Ala., 761; 27 Texas, 491; 2 Metc., (Ky.,) 516; 38 Mo., 485; 20 Cal., 312, 352;

28 Md., 338, 355; 34 Miss., 304; 36 Penn. St., 166; 35 Ala., 553; 33 Barb., 176; 11 Iredell, 431; 4 Peters, 466.

3. As to the various tax deeds. The deed of release from the county clerk to the county, was properly rejected when offered in evidence, because it was void on its face. It is not executed by the proper officer. The clerk of the board of supervisors was authorized by the law in force at the time of the sale, to execute such a deed, but the statute creating that office was repealed long before the date of the execution of this deed of release, and the office of county clerk was created, with similar duties, but no authority conferred on the county clerk to execute a deed of release for land sold to the county for taxes. (Laws of 1859, p. 356.) While the land still belonged to the county, and before the right of a purchaser intervened, the law authorizing counties to take deeds was repealed. (Act of February 27th, 1860.) It does not purport to and does not convey, the right, title and interest of the *owner* of the land. The tax-sale was not had on any day or at any time authorized by law, or when the treasurer was empowered by law to sell the same. It was sold on the 23d of September, 1859, for the taxes of 1858 "at a sale begun and publicly held on that day."

4. The quitclaim deed from the board of county commissioners of Miami county to Abbott, was properly rejected. There had been no sale of the land therein described for the delinquent taxes of 1858, and the county took nothing by the deed of release. It was not executed in the name of the county. Two, of the three persons comprising the board of commissioners, executed the deed, not in their official capacity as a board of county commissioners, but individually, and it conveys only their individual interests.

5. The tax deed from the county clerk to Joel Abbott of date 4th December 1868, was properly rejected. It recites a sale on the 23d of September 1859, for the delinquent taxes of 1858, and is void for that reason. It recites that the land was sold on the 23d September 1859 for the delinquent taxes of 1858, and that on the 19th day of December 1865 the

county clerk assigned to the said Joel Abbott the tax-certificate of sale of said land. By the act of March 1st, 1864, (§ 9, p. 72, laws of 1864,) all laws authorizing any officer to assign tax-certificates of sale was repealed, without a saving clause, and the act of 1864 is prospective and not retrospective in its operation, and no provision is made by the act of 1864 for the assignment of tax-certificates of sale issued prior to its passage. Hence, on the 16th of December 1865 the county clerk was not authorized to assign the certificate of sale of the land in controversy to Joel Abbott, and a deed based upon that assignment is void. *Swope v. Saine,* 1 Dillon's Ct. Ct., 416; *Shoat v. Walker,* 6 Kas., 65; *Sapp v. Morrill,* 8 Kas., 677.

The opinion of the court was delivered by

VALENTINE, J.: The decision of two questions will dispose of this case, to-wit: First, Is a judgment against Robert *Brimford,* quieting title to a certain piece of land, rendered upon a default, and upon service by publication only, valid and binding as against the owner of the land whose name is Robert *Binford?* Second, Is a sale of land, in Miami county, for the taxes of 1858, *begun and held on the* 23d *day of September* 1859, valid and binding as against the owner of the land? Both of these questions must be answered in the negative.

I. The names "Brimford" and "Binford" are not *idem sonans.* To convert the name of Binford into Brimford, an "r" must be interpolated, and the "n" must be changed into "m," which is not allowable; and under no rule of orthography or orthoepy can the two names be made to sound alike, · or be pronounced alike. (See authorities cited in brief of defendants in error.) If Binford had made an appearance in said case, and defended the action, then this irregularity could have been cured by amendment, even after judgment. But .Binford made no such appearance, and therefore the court never had sufficient jurisdiction so as to render any judgment, or make any order, or allow any amendment to be

25—11 KAS.

made against him. The notice published in the newspaper, requiring "Brimford" to appear and answer, etc., did not require "Binford" to appear. Hence the judgment founded upon such a service must be treated as a nullity as against Binford, and as against all persons holding under him.

II. There was no law in force in 1859, or indeed at other time, authorizing a tax-sale to be begun and held on the 23d day of September 1859, or on the 23d day of September of any other year. Hence said sale *was void.* Whether such a provision as may be found in the Comp. Laws of 1862, p. 879, § 10, or in the laws of 1866, p. 284, § 89, or in the Gen. Stat. of 1868, p. 1057, § 113, curing irregularities, would have made this sale valid or not, we need not examine, for no such provision was in force in 1859. All the proceedings founded upon such a sale are necessarily void. The principle of law heretofore decided, that a recorded tax-deed, void upon its face, will not of itself and alone cause the statute of limitations to run in its favor, is applicable to this case. *Hubbard v. Johnson,* 9 Kas., 632. The judgment of the court below is affirmed.

All the Justices concurring.