MEYER et al. v. KUHN et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

No. 86.

1. SERVICE OF PROCESS—PUBLICATION—EFFECT OF MISNOMER.
    When constructive service by publication is substituted by statute in place of personal citation, a strict compliance with statutory provisions is exacted, and it is essential that the publication shall correctly state the parties to the suit and their names. Accordingly *held*, that a publication of a summons to "Sarah E. Meyers" was not notice to one "Elizabeth Meyer" of the pendency of a suit against her, though coupled with a summons to the "unknown heirs of Henry Meyers, deceased," Elizabeth Meyer

being, in fact, the widow of one Henry Meyer, who left surviving certain children and heirs, and that a decree, rendered on default upon such summons and publication, was not binding on said Elizabeth Meyer.

2. SAME—VALIDITY OF JUDGMENT.
Where a bill bases the plaintiff's claim upon a tax deed, purporting to convey the entire interest in certain real estate, and the decree based on such bill is not binding upon the owner of a life interest in such property, because of defects in the publication of the summons, it cannot bind the owners of the estate in remainder.

3. EQUITY PRACTICE — AFFIRMATIVE RELIEF UPON ANSWER — PROCESS —WEST VIRGINIA CODE.
Code W. Va. c. 125, §§ 35, 57, provides that the defendant in a suit in equity may seek affirmative relief against the plaintiff or a codefendant by answer, with the same effect as by a cross bill, and that, when this is done, the case shall be decided upon the same principles as if a cross bill had been filed. The Code also provides that, in suits in equity, unknown and absent defendants may be served by publication in the manner therein provided. It seems, therefore, that, where a defendant seeks affirmative relief against his codefendants by answer, but no process is issued or order of publication taken on such answer against absent derendants, such absent defendants are not bound by a decree entered, upon their default, in favor of the defendant seeking such relief by his answer.

4. TAX SALES—VALIDITY OF DEED—WEST VIRGINIA STATUTE.
Under the statutes of West Virginia relative to tax sales and returns of delinquent lands, as interpreted by the courts of that state, a bill charging that the return of the sheriff of the list of delinquent sales, including certain land in controversy, was not filed and recorded within the time prescribed by law, that the affidavit annexed to the return was defective in certain specified points, that the complainants have redeemed the land, and that the claimant under the tax sale had actual personal knowledge of such redemption before taking his deed, and seeking to set aside such sale and deed, is good on demurrer.

Appeal from the Circuit Court of the United States for the District of West Virginia.

This was a suit by Elizabeth Meyer, widow of Henry Meyer, deceased, and Hannah E. Forbes, Emily A. King, and Levina R. Conrow, children, heirs, and distributees of the estate of Henry Meyer, deceased, against James I. Kuhn, Samuel S. Vinson, John N. Hauser, and Charles R. Henderson, to remove a cloud upon title to real estate. A demurrer to the bill was sustained, and complainants appeal.

Appellants, describing themselves as "Elizabeth Meyer, widow of Henry Meyer, deceased, and executrix of the last will and testament of Henry Meyer, deceased, and Hannah E. Forbes, Emily A. King, and Levina R. Conrow, children, heirs, and distributees of the estate of Henry Meyer, deceased, all of the city of New York, and residents and citizens of the state of New York," filed their bill against "James I. Kuhn and Samuel S. Vinson, citizens and residents of the state of West Virginia, and John N. Hauser and Charles R. Henderson, citizens and residents of the state of New Jersey," in the circuit court of the United States for the district of West Virginia, March 11, 1892, and a substituted bill, November 16, 1892. The bill charged that Henry Meyer, of New York, the husband of Elizabeth Meyer, and father of the remaining plaintiffs, owned an undivided one-half interest in and to a number of tracts of land in Wayne county, W. Va.; that Meyer died in June, 1875, testate, and his will was duly proved, probated, and filed, whereby he devised and bequeathed all his real estate and personal property to his wife, the said Elizabeth Meyer, for life and during widowhood, but, in case of remarriage, then one-fourth thereof for life, with remainder to his three daughters, Hannah, Emily, and Levina, and appointed his widow as ex-

ecutrix, with express power to sell or dispose of the real estate, or any portion thereof, in her discretion, at such prices and upon such terms as she might deem best. The bill further alleged that, upon the death of Meyer, plaintiffs became seised and possessed of the lands in question, and paid all the taxes thereon, up to and including the year 1880. That in 1882 plaintiffs owned an undivided one-half interest; defendant Hauser, an undivided one-eighth; defendant Henderson, an undivided one-fourth; John Phillips' heirs, an undivided one-eighth. That for the years 1881, 1882, 1883, and 1884 an undivided five-eighths interest in the tracts was taxed as belonging to the estate of Meyer. That the taxes were not paid, and the entire tracts were returned delinquent, regularly proceeded against, and sold December 14, 1885, and bought in by the state. That afterwards the said tracts were reported by the state auditor to the commissioner of school lands of Wayne county, in which the tracts were situated, and the commissioner began proceedings against said lands to procure their sale for the benefit of the school fund of the state, as provided by law. That thereupon plaintiffs John Phillips' heirs, Hauser, and Henderson filed their petition, setting up their title to the lands so being proceeded against, and asked to be allowed to redeem the same, and such proceedings were had as resulted in petitioners paying the taxes, interest, and damages due on the land so forfeited and sold, up to and including the year 1888, and upon the payment so made an order was entered by the circuit court of Wayne county on February 14, 1889, allowing redemption, and the clerk was directed to certify a copy of the order to the clerk of the county for record, so that the said lands might be entered upon the records of the county for taxation, which was done, and the order duly recorded. Plaintiffs further averred that they and their joint tenants were thereby fully reinstated in all their right, title, and interest in the said lands: that thereafter the heirs of Phillips sold and conveyed their interest to Samuel S. Vinson, and that plaintiffs, with said Vinson, Henderson, and Hauser, were the actual, legal, and equitable owners of the said tracts of land. The bill then alleged that, during the forfeiture for the nonpayment of taxes for the years 1883 and 1884, the five-eighths interest therein was erroneously placed on the land books of Wayne county, and charged with taxes for 1885 in the name of Henry Meyer's estate, and erroneously returned delinquent for the payment of taxes for 1885; and afterwards, on November 5, 1887, said interest was sold at delinquent sale, and purchased by defendant Kuhn at $43.09, and by deed of December 2, 1889, conveyed to him. That thereafter defendant Vinson, unknown to plaintiffs, brought a suit for partition of the tracts of land among the various owners, "making the said Kuhn and these plaintiffs parties to the said suit, without seeking to settle who was entitled to the undivided five-eighths interest, but stating that he was the owner of one-eighth, Charles R. Henderson of one-fourth, your orators of one-half, and J. N. Hauser of one-eighth." That such proceedings were had in the circuit court of Wayne county in that suit as resulted in a decree of partition of the said land, one-eighth to Vinson, one-eighth to Hauser, one-fourth to Henderson, and one-half to the Meyers estate or Kuhn, but without decreeing that Kuhn had title to the one-half belonging to plaintiffs. That after the decree ordering a partition was entered, plaintiff in that suit and Kuhn had the commissioners allot and lay off the land in parcels, and afterwards, without any amendment of the bill or proceedings, had another decree entered decreeing that Kuhn owned one-half, Hauser one-eighth, Henderson one-fourth, and Vinson one-eighth, a copy of the record of said partition suit being filed as an exhibit, and prayed to be taken as a part of the bill. That afterwards Kuhn, by deed dated June 27, 1891, quitclaimed to Vinson the surface interest in a parcel of the land, reserving the minerals, "of none of which proceedings did your orators have notice, nor did they ever assent to said partition, but that the said James I. Kuhn is now endeavoring to assert his said title to the one-half interest of these, your orators, in said land, and claims to own and hold the same." The bill then set up various grounds upon which it was charged that the tax sale and conveyance to Kuhn were invalid; stated that their one-half interest was worth at least $5,000; and averred that, at the time "the said Kuhn bought the pretended title to said land, he knew all the facts connected with the matter"; that at the time he

obtained the deed for said interest in the land, so purchased by him at the delinquent tax sale as aforesaid, he knew that the owners "had paid all the taxes due on said land, and redeemed the same, and that he took the same with full knowledge that the land had been redeemed, and had actual personal knowledge of the fact that said order of February 14, 1889, was made and entered by the circuit court of Wayne county, and that the taxes were all paid by the true owners, who had a title thereto superior to his (said J. I. Kuhn's) claim, and to all other claims, and that he was a purchaser by his own wrong, with full notice and knowledge." Plaintiffs tendered to Kuhn the full amount of the purchase money he paid for the land, with interest and costs, though denying that Kuhn had any right under the purchase, and prayed that the tax deed of October 2, 1889, and the quitclaim deed of Kuhn to Vinson of the surface of part of their land, be set aside as clouds, and be declared null and void; for an injunction; and that plaintiffs be quieted in the possession and title of the one-half interest in said tract; and for general relief.

In the record of the alleged partition suit, annexed to the bill, appeared a summons dated January 30, 1891, against "John N. Hauser, Chas. R. Henderson, Sarah E. Meyers, widow, in her own right, and as executrix of the will of Henry Meyers, deceased, and the unknown heirs of Henry Meyers, deceased, and J. I. Kuhn." This summons bore the indorsement of acceptance of service by J. I. Kuhn, February 23, 1891, but no return. The bill of complaint of Vinson purported to have been filed against the parties named in the summons, and alleged that Vinson was the owner of an undivided one-eighth, Hauser of one-eighth, Henderson of one-fourth, and Meyers in his lifetime of one-half interest in the tracts of land, and stated "that he has since died, leaving as his widow Sarah E. Meyers, who is the executrix of his will, and that the names of the heirs of the said Henry Meyers, deceased, are to the plaintiff unknown; that the plaintiff has used due diligence to ascertain their names, but has been unable to do so"; and that J. I. Kuhn claims five-eighths interest in said land by reason of a tax deed. The bill averred that the property was capable of being partitioned, and that partition would be advantageous to the parties in interest, and prayed for the appointment of commissioners, and for general relief. An affidavit of order of publication accompanied the bill, sworn to January 30, 1891, stating, upon information and belief, "that John N. Hauser, Charles R. Henderson, Sarah E. Meyers, widow of Henry Meyers, deceased, and the unknown heirs of Henry Meyers, deceased, are nonresidents of the state of West Virginia." The record showed an order at rules on the first Monday of February, 1891, as follows: "February Rules, 1891. Sum. Ex. on R. D. Bill filed and O. P. awarded. Decree nisi." The order of publication was as follows: "The object of this suit is to partition fourteen tracts of land situate on Kiah's creek, in Wayne county, West Virginia, and known as the 'Denner Lands.' This day came the plaintiff by his attorneys, and upon his motion, and it appearing from an affidavit filed with the paper in this suit that John N. Hauser, Charles R. Henderson, Sarah E. Meyers, and the unknown heirs of Henry Meyers, deceased, are nonresident of the state of West Virginia, it is therefore ordered that they do appear here within four weeks from the first publication of this notice, and do what is necessary to protect their interest herein." To this was attached the certificate of the newspaper publisher, under date May 15, 1891, "that the order of publication and notice hereto annexed was published once a week for four successive weeks, commencing on the 5th day of February, 1891, in the paper aforesaid." The record thus continued: "And afterwards, to wit, at rules held in the clerk's office of the Wayne circuit court on the first Monday in March, 1891, there was an order made, which order is in the words and figures following, to wit: March Rules, 1891. O. P. fully pub. and posted. Bill taken for confessed, and set for hearing." On Tuesday, May 26, 1891, an order was entered in the suit to the effect that the defendant Kuhn tendered and asked leave to file his separate answer to the bill, which was granted over plaintiff's objection, and the answer accordingly filed, and plaintiff Vinson replied thereto generally. The answer neither admitted nor denied the allegations that Sarah E. Meyers was the executrix of Henry Meyers, deceased, or that plaintiff owned an undivided one-eighth of the land.

or Hauser one-eighth, or Henderson one-fourth, and alleged that Kuhn was seised and possessed of an undivided five-eighths of the land, as would appear by his deed therefor dated October 2, 1889, which was filed therewith. The answer thus concluded: "This defendant avers that the said five-eighths of said lands were properly charged to the estate of said Henry Meyers upon the land books of said Wayne county, and were regularly forfeited and sold for the nonpayment of the taxes so assessed thereon, and by his purchase and deed aforesaid he became vested with all the title, right, estate, and interest of said Henry Meyer or his heirs therein, whether that interest and estate was five-eighths or one-eighth undivided thereof, and he prays that his said five shares be laid off to him in one contiguous boundary, and he will ever pray," etc. On the same day, May 26th, an order was entered appointing a guardian ad litem to represent the interest of the unknown heirs of Henry Meyers, deceased, and an answer filed by him committing the cause of said heirs to the protection of the court. On the same day a decree was entered as follows: "This day this cause came on to be heard upon the bill and exhibits herein filed, and the separate answer of J. I. Kuhn, filed herein, and the answer of S. V. Crum, guardian ad litem for the unknown heirs of Henry Meyers, deceased, and it appearing to the court that the process herein was returned duly executed on the resident defendant at the March rules, 1891, and that an order of publication was duly published and posted as required by law as to the nonresident defendants herein, and that the bill herein was filed at February rules, 1891, and the same having been regularly taken for confessed and set for hearing as to the resident defendant, and the same is now set for hearing as to the nonresident defendants failing to appear, plead, or answer, and, the cause having been fully argued by counsel, the court is of opinion that the plaintiff is entitled to the relief prayed for in his bill." It was then decreed that the commissioners thereby appointed should "lay off and partition said lands as follows: That one-eighth thereof be laid off adjoining the lands now owned by S. S. Vinson, and be assigned to the said S. S. Vinson, one-eighth thereof be laid off to John N. Hauser, and one-fourth thereof be laid off and assigned to Charles R. Henderson, and one-half thereof laid off in one continuous body to J. I. Kuhn, or the heirs of Henry Meyers, deceased; and that said commissioners partition said land as above ordered, and make report of said partition to this court at the present term thereof."

On June 2, 1891, the report of the commissioners was filed and confirmed, which report laid off certain tracts or parcels of land to Vinson as his one-eighth, to Hauser as his one-eighth, to Henderson as his one-fourth, and certain tracts or parcels "as the one-half interest belonging to the heirs of Henry Meyers, deceased, or J. I. Kuhn." The order proceeded: "And this cause coming on to be further heard upon said report, and the bill and exhibits filed herein, and the answers of the guardian ad litem and J. I. Kuhn, and it appearing to the court that J. I. Kuhn is the owner of that portion of said land assigned to J. I. Kuhn, or the heirs of Henry Meyers, deceased, being one-half of all the lands in the plaintiffs' bill mentioned, it is therefore adjudged, ordered, and decreed, that said partition be and the same is hereby confirmed." A commissioner was then appointed to make deeds, and costs decreed to be paid, one-eighth by Vinson, one-eighth by Hauser, one-fourth by Henderson, and one-half by Kuhn. Certain proceedings and orders in reference to costs of January 28, June 3, and October 1, 1892, also appear. Upon the bill of Elizabeth Meyer and others in this case, subpoena was duly issued and served on defendants Vinson and Kuhn. Thereupon Vinson filed his answer to said bill, and prayed as affirmative relief for an order restraining Kuhn from prosecuting a suit he had commenced against Vinson on a note given by Vinson for part of the purchase price of land bought by Vinson of him, and now in controversy, upon which a restraining order was made and entered December 14, 1892; and defendant Vinson was given leave to file a cross bill asking affirmative relief within sixty days from date, defendant Kuhn excepting. December 6, 1893, defendant Kuhn tendered his demurrer to the bill, which was set down for argument, and on December 7th the demurrer was sustained, and a decree entered dismissing the bill, with costs to the defendants, and dissolving the injunction against Kuhn, from which decree plaintiffs were allowed an appeal.

F. B. Enslow, for appellants.

J. F. Brown, for appellees.

Before FULLER, Chief Justice, SIMONTON, Circuit Judge, and ORRIS, District Judge.

FULLER, Chief Justice, after stating the facts as above, delivered the opinion of the court.

The demurrer rested, substantially, on two grounds: First, that the decree in the partition suit determined the title to the land, and must be given effect as a bar; second, if not, that the tax deed to Kuhn was valid, and vested title in the lands in him, of which he was not divested by the alleged redemption. The circuit court sustained the demurrer upon the first of these grounds, and was of opinion that complainants should have proceeded to obtain the vacation of the decree in the suit in which it was rendered, as provided by statute, and that, so long as they did not so proceed, that decree was in full force, and must be respected. By the Code of West Virginia it is provided that "in any suit in equity where the bill states that the names of the persons interested in the subject to be divided or disposed of, are unknown, and makes such persons defendant by the general description of parties unknown, on affidavit of the fact that the said names are unknown, an order of publication may be entered against said unknown parties. * * *" And "on affidavit that a defendant is not a resident of this state * * * an order of publication may be entered against such defendant"; that "every order of publication shall state briefly the object of the suit, and require the defendants against whom it is entered, or the unknown parties, to appear within one month after the date of the first publication thereof, and do what is necessary to protect their interests." Provision is made for the publication of such order "once a week for four successive weeks in some newspaper published in the county in which the order is made or directed," etc.; and for posting the same "at the front door of the courthouse of the county where the court is held at least twenty days before judgment or decree is rendered"; and that "when such order shall have been so posted and published, if the defendants against whom it is entered, or the unknown parties, shall not appear at the next term of the court, after such publication is completed, the case may be tried or heard as to them." And it is further provided that "any unknown party or other defendant, who was not served with process in this state and did not appear in the case before the date of such judgment, decree or order, or the representative of such," may "have the proceedings reheard in the manner and form required * * * and not otherwise," namely, as provided in relation to attachments, "he may within one year after a copy of such judgment or decree has been or shall be served upon him at the instance of the plaintiff, or within five years from the date of such judgment or decree, if he be not so served, petition to have the proceedings reheard, on giving security for the costs which have accrued and shall thereafter accrue, and such defendant shall

be admitted to make defense against any such judgment or decree as if he had appeared in the case before the same was rendered, except that the title of any bona fide purchaser of any property real or personal, sold under such attachment shall not be brought in question or impeached." Code W. Va. c. 124, §§ 11–14; Id. c. 106, § 25. If the complainants were not proceeded against as parties to the partition suit, or if they were, yet, as there was no service of process on, nor appearance by, the defendants in that suit other than Kuhn, if they were not so proceeded against that the court obtained jurisdiction over them, the decree therein could not be relied on as a defense to this suit. Judgments and decrees are open to collateral attack when jurisdiction over the subject-matter or over the person is wanting, and whatever contrariety of view may have been expressed as to the conclusiveness, under particular circumstances, of the action of courts of general jurisdiction, there is no dispute that, when the record affirmatively shows the absence of the steps necessary to obtain jurisdiction, the judgment or decree may be collaterally overthrown. Under section 1 of chapter 79 of the Code of West Virginia, tenants in common, joint tenants, and coparceners were compellable to make partition, and the circuit court of the county wherein the estate, or any part thereof, might be, in exercising the jurisdiction in partition, might "take cognizance of all questions of law, affecting the legal title, that may arise in the proceedings." By sections 35 and 57 of chapter 125 of the Code it was provided that "the defendant in a suit in equity may in his answer allege any new matter constituting a claim for affirmative relief in such suit against the plaintiff or a defendant therein, in the same manner and with like effect as if the same had been alleged in a cross bill filed by him therein"; and that, when this is done, "the case shall be decided upon the same principles, and the same relief shall be decreed in the case as if a cross bill had been filed to obtain such relief."

Assuming that the defendant Kuhn could, under these sections, have had the question of title, as between himself and his codefendants, adjudicated upon an answer, nevertheless his proceeding in that regard would be subjected to the same tests as if he had sought affirmative relief by a cross bill. And it may be said, generally, that the appearance of a defendant to a cross bill, as between codefendants, should be enforced in the same manner as the appearance of a defendant to an original bill. Railroad Co. v. Bradleys, 10 Wall. 299; Smith v. Woolfolk, 115 U. S. 143, 5 Sup. Ct. 1177; Beach, Eq. Prac. § 445; and see Conrad v. Buck, 21 W. Va. 396, 404. This answer of Kuhn was filed on May 26, 1891, the bill having been previously taken as confessed against him, and no process was issued or order of publication taken thereon, nor any notice thereof given to his codefendants, nor any rule entered on them to plead thereto. The decree for partition was entered on the same 26th of May. On the 2d of June thereafter, the report of the commissioners was confirmed, and a further decree made, which recited that Kuhn was the owner of that portion of the lands "assigned to J. I. Kuhn or the heirs of Henry Meyers, deceased," and then di-

rected deeds to be made of the shares as partitioned by the commissioners. Under these circumstances, it might well be held that the decree, so far as the title to the Meyer half was concerned, was of no binding force, and might be disregarded when drawn in question in another case. Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773. But this result may be reached on other grounds, which appear to us decisive. Proceedings in partition or to quiet title are not strictly proceedings in rem, for they are not taken directly against property, but they are regarded, so far as they affect property, as proceedings in rem sub modo, in respect of which, while there must be reasonable notice to the parties, personal service is not essential to jurisdiction, and constructive service may be substituted. Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557. When, however, constructive service by publication is substituted by statute in place of personal citation, a strict compliance with statutory provisions is exacted. Guaranty Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 147, 11 Sup. Ct. 512; McCoy's Ex'r v. McCoy's Devisees, 9 W. Va. 443; Hoffman v. Shields, 4 W. Va. 490. It is essential that the publication shall correctly state the parties to the suit and their names. Detroit v. Detroit City Ry. Co., 54 Fed. 1, 9; 16 Am. & Eng. Enc. Law, 815, and cases cited. In Colton v. Rupert, 60 Mich. 318, 27 N. W. 520, the suit was by Garrett B. Hunt and Henry S. Cunningham against a nonresident defendant. In the publications the name of one of the complainants was printed "Grant" instead of "Garrett," and the supreme court of Michigan held the decree not binding collaterally. The supreme court of Kansas in Entrekin v. Chambers, 11 Kan. 368, held that a judgment against "Robert Brimford" quieting title to a certain piece of land, rendered upon a default and upon service by publication only, was not valid as against the owner of the land, whose name was "Robert Binford." So in Chamberlain v. Blodgett, 96 Mo. 482, 10 S. W. 44, a sale of the land of M. B. Millen for taxes in a tax proceeding where the publication of notice of the suit was to "M. B. Miller" was treated as void; and it was held that it made no difference, as against a grantee of "Millen," that the name of "Miller" appeared on the tract books of the county as owner of the land. The court of appeals of Maryland decided that the omission of the middle initial was not fatal to a notice of sale (White v. McClellan, 62 Md. 347); and in Lane v. Innes, 43 Minn. 137, 45 N. W. 4, the supreme court of Minnesota was of opinion that the name "Beulah M. Plimpton" was so slightly variant from "Berlah M. Plimpton" that a mistake in that regard was not material. In Iowa and Ohio it has been held that, although the name is incorrectly spelled, yet if accompanied by other description, making the identification clear, the notice may be sustained. Fanning v. Krapfl, 61 Iowa, 417, 14 N. W. 727, and 16 N. W. 293; Id., 68 Iowa, 244, 26 N. W. 133; Buchanan v. Roy's Lessee, 2 Ohio St. 251. The supreme court of Iowa observed that "a published notice is not necessarily sufficient if it is such that the defendant upon actually seeing it would probably conclude that it was intended for him. The office of the notice is in part to give the pendency of the action

notoriety. It should be such that others than the defendant, seeing it, and knowing the defendant, or knowing of him, would not probably be misled by it as to the person for whom it was intended." 61 Iowa, 420, 14 N. W. 727, and 16 N. W. 293; 68 Iowa, 246, 26 N. W. 133. In Marx v. Hanthorn, 148 U. S. 172, 13 Sup. Ct. 508, it was ruled that notice under the statutes of Oregon that the property of "Ida J. Hawthorn" was to be sold for taxes was not only not notice that the property of "Ida J. Hanthorn" was to be sold, but was actually misleading, and that such want of notice, or misleading notice, vitiated the sale.

In the partition suit under consideration the order of publication, as entered and published, ran against "Sarah E. Meyers, and the unknown heirs of Henry Meyers, deceased," as "nonresident of the state of West Virginia." Whatever question there might be as to the identity of "Meyer" and "Meyers," which has been differently determined, as a strict construction was or was not supposed to be applicable (Gonzalia v. Bartelsman, 143 Ill. 634, 32 N. E. 532; Smurr v. State, 88 Ind. 504), there can be no doubt that "Elizabeth Meyer" is a distinct name from "Sarah E. Meyers," and there is nothing to help out the description, if it could be properly aided in the instance of such a variance. Sarah E. Meyers was not described as the widow or devisee of Henry Meyers, deceased, nor as a citizen of New York. It would be going much too far to hold that the coupling of "the unknown heirs of Henry Meyers, deceased," with "Sarah E. Meyers" would operate to supply the defect, upon the ground that Elizabeth Meyer, or other persons reading the notice, ought to conclude that "the unknown heirs of Henry Meyers, deceased," were the daughters and devisees of Henry Meyer, and that, therefore, Sarah E. Meyers must be Elizabeth Meyer, the widow and devisee of Henry Meyer, deceased.

We are not unmindful of the fact that in the bill complainants say that the pleading in partition made "the said Kuhn and these plaintiffs parties to the said suit," but taking all the allegations of the bill together, and the record of the partition suit as a part thereof, we regard that as merely averring an unsuccessful attempt to make plaintiffs parties, and not a concession on their part that they were legally made or brought in as such. It is also urged that as, from the record of the proceedings in redemption, it appears that Elizabeth Meyer petitioned for redemption, but that the order ran in the name of Sarah E. Meyers, it should be concluded that the latter was the name of the widow and devisee of Henry Meyer, especially as the bill does not specifically aver that her name was Elizabeth Meyer, and not Sarah E. Meyers. But upon a demurrer to the bill, in which this complainant is stated to be Elizabeth Meyer, widow of Henry Meyer, deceased, and executrix of his last will and testament, and which has annexed thereto, as a part thereof, the will of the said Henry Meyer, naming his wife throughout as Elizabeth, we are bound to assume that that was her name, and must decline to treat that fact as doubtful because of the description in the order referred to which did not in that respect conform to the petition. In our judgment, Mrs. Meyer was

not bound by the decree in the partition suit, and, being a stranger to that decree, was not obliged to come into the state court, and have it vacated under the statute in that behalf. Inasmuch as the decree was invalid as to her, it must be held so as to the daughters of Meyer, his devisees in remainder. This is so, apart from the independent reasons for holding that the publication was ineffectual as to them. Kuhn claimed under the tax deed which purported to convey title to five-eighths of the land. The alleged taxes were not levied on the life estate nor the estate in remainder, but on the entire interest. The sale on which the deed rested was a sale of the entire interest in five-eighths, and not of the life estate and estate in remainder as distinct interests therein. If the sale and deed were invalid, they were invalid as to the entirety. The decree assumed to adjudge the title in Kuhn as an entirety, and if not binding as to the whole estate was certainly not binding as to the estate in remainder.

2. The second ground of demurrer asserted the validity of the tax deed as apparent on the face of the record. We do not think it best to enter upon any extended discussion of this branch of the case, as, in view of the situation of the pleadings, the cause cannot properly be finally disposed of at this time. In Poling v. Parsons, 38 W. Va. 80, 18 S. E. 379, it was ruled that redemption statutes ought to be construed liberally in favor of persons entitled to redeem, and Danser v. Johnson, 25 W. Va. 385, and Dubois v. Hepburn, 10 Pet. 1, were cited to the same effect. In Jackson v. Kittle, 34 W. Va. 207, 12 S. E. 484, it was held that, as the law required the sheriff to append to his return of sales of delinquent lands a prescribed affidavit, if he omitted to do so, or omitted from such affidavit a material or substantial portion of it, as so prescribed, the clerk should not make the purchaser a deed, and that, if objection were interposed before the deed were made, the sale should be set aside. So in Hays v. Heatherly, 36 W. Va. 613, 15 S. E. 223, it was adjudged that when the sheriff appended, to his list of lands sold for taxes, an affidavit not fulfilling the requisitions of the statute as to an interest, past or present, direct or indirect, in the purchase, such sale would be absolutely void; and if, after the expiration of the year to redeem and before the purchaser had obtained his deed, the owner of the land offered to redeem, and the purchaser refused, and afterwards obtained a deed from the clerk, a bill brought to set aside the deed, alleging the facts and accompanied by the proper tender, would be good on demurrer. See, also, Baxter v. Wade (W. Va.) 19 S. E. 404. Judge Jackson, holding the United States circuit court for the district of West Virginia, decided in Wakeman v. Jackson, 32 W. Va. Append., that the failure of the sheriff to return his list of lands sold as delinquent for taxes within the time prescribed by law, as well as the failure of the recorder to note the time of the return, was fatal to the acquisition of title. The bill here charged that the entry of the land for taxation for the year 1885 on the land books of Wayne county, and the return of the land as delinquent for nonpayment, were

illegal and erroneous; that the return of the sheriff of the list of delinquent sales was not filed and not recorded within the time prescribed by law; that the sheriff did not make the affidavit provided by law, the return and affidavit being annexed, and the affidavit closely resembling that considered in Hays v. Heatherly; that the complainants have redeemed according to law, and paid all taxes, including those of 1885; and that Kuhn had actual personal knowledge of such redemption and payment of taxes before the deed was made to him. In the light of the authorities, these averments seem to us sufficient to require an answer. It may be remarked in this connection that the one-eighth claimed by Vinson was derived from the heirs of John Phillips, as appears from his statement of the ownership of the other seven-eighths, and as is charged in the bill in this case, admitted by the demurrer, and not denied by Vinson's answer. The deed to Vinson is referred to as an exhibit to his bill, and made part thereof, but the clerk certified that it was not on file, and it is therefore not set forth in the record. This eighth was one of the five-eighths covered by the tax deed to Kuhn, and in respect of which the alleged redemption was made. No explanation is suggested why the tax deed was allowed effect as to the four-eighths, and not as to the one-eighth, nor does the record indicate the ground for this apparent discrimination. As we do not consider the issues between defendants Vinson and Kuhn to be properly before us on this appeal, we express no opinion upon the controversy between them. The circuit court may deal with that subject after the mandate has gone down. The decree is reversed, and the cause remanded, with a direction to the circuit court to overrule the demurrer, with leave to answer, and for further proceedings in conformity to law.